UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/26/16
```

MINDSPIRIT, LLC, MALVIKA
KUMAR, and ROSEWOOD PARTNERS,

                Plaintiffs,

- against -

EVALUESERVE LTD.,
            Defendant.

**ORDER**

15 Civ. 6065 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

        In this action, Mindspirit, LLC, and its two sole members, Malvika Kumar and Rosewood Partners, allege that Defendant Evalueserve Ltd. breached an agreement in which it agreed to issue 480,000 Evalueserve stock options to Mindspirit. According to Plaintiffs, although Evalueserve issued these options to Mindspirit in April 2001, it later breached the parties' agreement by wrongfully re-issuing these stock options in the names of Rajat Gupta and Anil Kumar, non-parties to this action. (See Am. Cmplt. (Dkt. No. 19) at ¶¶ 20, 49, 61, 64)

        The Amended Complaint alleges: (1) breach of contract; (2) "negligent & careless performance of contractual work"; (3) breach of the implied duty of good faith and fair dealing; (4) breach of fiduciary duty; (5) fraudulent concealment and misrepresentation by a fiduciary; (6) "actual & constructive fraud in contract and course of contract"; (7) unjust enrichment; (8) gross negligence; (9) promissory estoppel; (10) securities fraud; and (11) equitable estoppel. Evalueserve has moved to dismiss all of Plaintiffs' claims, pursuant to Fed. R. Civ. P. 12(b)(1) and (6), on the grounds that (1) Malvika Kumar and Rosewood Partners lack standing; (2) this Court lacks subject matter jurisdiction; and (3) Plaintiffs have failed to state a claim. (Dkt. No. 22)

## BACKGROUND

### I.    FACTS

Plaintiff Mindspirit has two members and co-owners: Plaintiff Malvika Kumar
and Plaintiff Rosewood Partners, an Illinois partnership. (Am. Cmplt. (Dkt. No. 19) ¶¶ 2-3)
Anil Kumar ("Kumar") and Rajat Gupta were "business advisors" to Mindspirit during the
relevant time period, although they were not members of the LLC.[1] (Id. at ¶¶ 11, 14)  Plaintiff
Malvika Kumar is Kumar's wife. (Id. at ¶¶ 19)  Gupta was a member of Rosewood Partners
from 1995 to 2013. (Deuser Affidavit (Dkt. No. 40) at ¶ 7)

In March 2001, Defendant Evalueserve approached Kumar and Gupta about
becoming "angel investors" in Evalueserve. (Am. Cmplt. (Dkt. No. 19) at ¶ 18)  Kumar and
Gupta instead informed Evalueserve that Mindspirit would be the "angel investor," and that
Mindspirit would transfer $100,000 to Evalueserve in exchange for 180,000 shares of
Evalueserve common stock and 480,000 Evalueserve stock options. (Id. at ¶¶ 19-20)  Mindspirit
provided the $100,000 to Evalueserve in September 2001, and in October 2002 Evalueserve
delivered 180,000 shares of Evalueserve stock – in Mindspirit's name – to Mindspirit. (Id. at ¶¶
21, 24, 27)  In February 2011, the 180,000 shares of Evalueserve stock owned by Mindspirit
were reissued in the names of Mindspirit's members, Malvika Kumar and Rosewood Partners.
(Id. at ¶ 37)

As to the stock options, on November 7, 2001, Evalueserve issued a "Stock
Option Grant Notice" to Mindspirit pursuant to a "Stock Option Agreement" that the parties

---

[1]  In January 2010, Kumar pleaded guilty to conspiracy to commit securities fraud and to
securities fraud. (Id. at ¶ 12; see also United States v. Anil Kumar, 10-cr-00013-DC (Dkt. Nos.
38, 39, 50))  In June 2012, Gupta was found guilty of conspiracy to commit securities fraud and
several counts of securities fraud.  Gupta was incarcerated when the Amended Complaint was
filed on January 19, 2016. (Am. Cmplt. (Dkt. No. 19) at ¶ 13; see also United States v. Rajat
Gupta, 11-cr-00907-JSR (Dkt. Nos. 107, 128))

2

entered into at that time.[2]  (Id. at ¶ 25 and Ex. 1 (Dkt. No. 19-1) at 1, 3)[3]  In this notice, Evalueserve granted Mindspirit the option to purchase 480,000 shares of Evalueserve stock at a strike price of $.56.  (Id. at Ex. 1 (Dkt. No. 19-1) at 1)  The vesting date for these "nonstatutory" stock options is April 17, 2002; the expiration date is April 16, 2006.  (Id.)  The stock options were issued pursuant to Evalueserve's 2001 Equity Incentive Plan.  (Id.)

        The Amended Complaint goes on to allege – "on information and belief" – that "[a]t some point still to be determined . . . Evalueserve unilaterally and without notice or consent from Mindspirit, LLC or its qualified representatives, extended the stock options and incorrectly [re-]issued the stock options in the names of . . . Mr. Anil Kumar and Mr. Rajat Gupta."  (Id. at ¶ 49)  Evalueserve's chairman, Alok Aggarwal, claims that in a 2001 or 2002 telephone call, Gupta asked that the 480,000 options be re-issued in his and Kumar's names.  (Id. at ¶¶ 18, 50)  Plaintiffs contend that Gupta made no such request and that – in re-issuing the options in the names of Gupta and Kumar – Evalueserve acted "unilaterally and without any notice to or consent from Mindspirit, LLC or its qualified representatives."  (Id. at ¶ 49)

        On or about April 15, 2011, Kumar and Gupta's accountant, Aaron Deuser, advised Evalueserve that Kumar and Gupta wanted to immediately exercise their Evalueserve stock options.  (Id. at ¶¶ 30, 38-39)  Plaintiffs allege that Evalueserve "pressured" Kumar and Gupta to exercise their options, "because a ten year deadline for exercising the options was quickly approaching, and . . . there would be tax implications for Evalueserve if the options were not exercised prior to the 10 year deadline[.]"  (Id.)  On or about April 18, 2011, Evalueserve advised Kumar and Gupta to complete notices of exercise and compliance-related forms in their

---

[2]  Although the options were issued on November 7, 2001, the grant notice was "backdated to a grant date of April 17, 2001."  (Id. ¶ 25)
[3]  All page citations are as reflected on this District's Electronic Case Filing system.

3

personal names. According to Plaintiffs, "the compliance forms should have been filled out in

the names of the original grantee Mindspirit and specifically managers Malvika Kumar and

Rosewood Partners." (Id. at ¶ 40)

On or about June 21, 2011, Aggarwal informed Deuser – Gupta's accountant –

that the Bermuda Monetary Authority had denied Kumar and Gupta's applications to exercise

their options. (Id. at ¶ 46) Plaintiffs allege that Evalueserve subsequently refused to transfer the

stock options back to Mindspirit, or to permit Plaintiffs to participate in the Evalueserve Share

Buyback Program that Evalueserve conducted on December 20, 2013. (Id. at ¶¶ 52, 58)

## II.   PROCEDURAL HISTORY

The Complaint was filed on August 3, 2015. (Dkt. No. 1) On October 14, 2015,

Evalueserve filed a pre-motion letter requesting permission to file a motion to dismiss. (Dkt. No.

13) At the initial pre-trial conference on December 17, 2015, this Court alerted Plaintiffs to a

number of pleading defects in the Complaint and invited Plaintiffs to amend. (Dec. 17, 2015 Tr.

(Dkt. No. 36) at 3-9[4]) Plaintiffs filed an Amended Complaint on January 13, 2016 (Dkt. No. 19),

and Evalueserve moved to dismiss on February 23, 2016. (Dkt. No. 22)

On April 4, 2016, Plaintiffs moved for a temporary restraining order to prevent

the Evalueserve stock options at issue from expiring on April 6, 2016. (Dkt. No. 26) This Court

conducted a hearing on Plaintiffs' application on April 5, 2016 (Dkt. No. 31), and on April 6,

2016, this Court issued an order denying Plaintiff's request for a temporary restraining order,

finding that Plaintiffs had not demonstrated (1) a likelihood of success on the merits; or (2) that

they would suffer irreparable harm in the absence of a temporary restraining order. (Apr. 6,

2016 Order (Dkt. No. 38) at 3-7)

---

[4] The page numbers of documents referenced in this Order correspond to the page numbers designated by this District's Electronic Case Filing system.

4

## DISCUSSION

### I.    LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "In considering a motion to dismiss . . . the court is to accept as true all facts alleged in the complaint," Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007) (citing Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 87 (2d Cir. 2002)), and must "draw all reasonable inferences in favor of the plaintiff." Id. (citing Fernandez v. Chertoff, 471 F.3d 45, 51 (2d Cir. 2006)).

A complaint is inadequately pled "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement,'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557), and does not provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." Port Dock & Stone Corp. v. Oldcastle Northeast, Inc., 507 F.3d 117, 121 (2d Cir. 2007) (citing Twombly, 550 U.S. at 555).

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) (citing Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002); Hayden v. County of Nassau, 180 F.3d 42, 54 (2d Cir. 1999)). Courts "may also consider matters of which judicial notice may be taken under Fed. R. Evid. 201." Kramer v. Time Warner Inc., 937 F.2d 767, 773 (2d Cir. 1991).

5

Where a party moving to dismiss cites to material that is outside the pleadings, the court must either exclude that material and disregard it for purposes of the motion to dismiss or "'convert the motion to one for summary judgment under Fed. R. Civ. P. 56 and afford all parties the opportunity to present supporting material.'" Kopec v. Coughlin, 922 F.2d 152, 154 (2d Cir. 1991) (quoting Fonte v. Board of Managers of Continental Towers Condominium, 848 F.2d 24, 25 (2d Cir. 1988)).

## II.    SUBJECT MATTER JURISDICTION

Plaintiffs allege that this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332.[5] (Am. Cmplt. (Dkt. No. 19) at ¶ 8)  Federal district courts have original jurisdiction over actions in which the amount in controversy exceeds $75,000 and is between "citizens of a State and citizens or subjects of a foreign state. . . ." 28 U.S.C. § 1332.  In order for diversity jurisdiction to exist, "there must be 'complete diversity' so that no adverse parties are citizens of the same state." MBIA Ins. Corp. v. Royal Bank of Canada, 706 F. Supp. 2d 380, 385 (S.D.N.Y. 2009) (citing Caterpillar Inc. v. Lewis, 519 U.S. 61, 68 (1996)).

Here, Defendant Evalueserve, Ltd. is a Bermuda corporation with its principal place of business in Bermuda.  (Am. Cmplt. (Dkt. No. 19) at ¶ 4)  Mindspirit is a Nevada LLC with its principal place of business in Connecticut.  (Id. at ¶ 1)  Malvika Kumar resides in California, and Rosewood Partners is an Illinois partnership.  (Id. at ¶¶ 2-3)  For purposes of determining diversity jurisdiction, Mindspirit – a limited liability company – and Rosewood – a

---

[5] Although the parties have not made this point, the Court notes that the Amended Complaint pleads a basis for federal question jurisdiction under 28 U.S.C. § 1331. The Amended Complaint's tenth cause of action alleges securities fraud under the Securities Exchange Act. (Am. Cmplt. (Dkt. No. 19) at ¶¶ 131-38)  This Court will nonetheless address diversity jurisdiction because – as explained below – the securities fraud claim will be dismissed, and courts dismissing a federal claim will ordinarily decline to exercise supplemental jurisdiction over pendent state law claims absent an independent basis for exercising federal jurisdiction.

partnership – have the citizenship of all of their members. Bayerische Landesbank, New York

Branch v. Aladdin Capital Mgmt. LLC, 692 F.3d 42, 49 (2d Cir. 2012); Woodward v. D.H.

Overmyer Co., 428 F.2d 88, 883 (2d Cir. 1970). When this action was filed,[6] the members of

Rosewood Partners resided in Illinois, Connecticut, New York, and Massachusetts. (Deuser

Affidavit (Dkt. No. 40) at ¶ 8)[7] The Court concludes that complete diversity existed at the time

this action was filed.

The exercise of diversity jurisdiction pursuant to 28 U.S.C. § 1332 also requires

that the amount in controversy exceed $75,000. This requirement is met as long as it is

"reasonably possible" that a plaintiff could recover an amount in excess of the jurisdictional

amount. Chase Manhattan Bank, N.A. v. American Nat. Bank and Trust Co. of Chicago, 93 F.3d

1064, 1070 (2d Cir. 1996). Here, the Amended Complaint alleges that the 480,000 Evalueserve

stock options are worth "millions of dollars." (See Am. Cmplt. (Dkt. No. 19) at ¶ 113) This

Court concludes that it has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

## III.   MALVIKA KUMAR AND ROSEWOOD PARTNERS' STANDING

Under New York law,

> an individual shareholder cannot secure a personal recovery for an alleged wrong
> done to a corporation. The fact that an individual closely affiliated with a
> corporation . . . is incidentally injured by an injury to the corporation does not
> confer on the injured individual standing to sue on the basis of either that indirect
> injury or the direct injury to the corporation.

New Castle Siding Co., Inc. v. Wolfson, 97 A.D.2d 501, 502 (2d Dept. 1983) (internal citations

omitted), aff'd, 63 N.Y.2d 782 (1984). A shareholder only has standing where she can

---

[6] "[A]ll challenges to subject-matter jurisdiction premised upon diversity of citizenship [must be measured] against the state of facts that existed at the time of filing[.]" Grupo Dataflux v. Atlas Global Group, L.P., 541 U.S. 567, 571 (2004).

[7] "In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).

demonstrate that her injury "resulted from the violation of a duty owing to the shareholder from the wrongdoer, having its origin in circumstances independent of and extrinsic to the corporate entity." Id.; see also MatlinPatterson ATA Holdings LLC v. Federal Express Corp., 87 A.D.3d 836, 839 (1st Dept. 2011). The same standard applies to claims brought under federal law. See Feinberg v. Katz, No. 99 Civ. 0045(CSH), 01 Civ. 2738(CSH), 2005 WL 2990633, at *4 (S.D.N.Y. Nov. 7, 2005) ("[A] shareholder in a corporation does not have standing to assert claims alleging wrongs to the corporation." (citing Jones v. Niagara Frontier Trans. Auth. (NFTA), 836 F.2d 731, 736 (2d Cir. 1987))). Plaintiffs Malvika Kumar and Rosewood Partners bring their claims as members of Mindspirit, a corporate entity, and therefore do not have standing.

Because Malvika Kumar and Rosewood Partners's claims are not based on the violation of a duty "independent of and extrinsic to" Evalueserve's duty to Mindspirit, Malvika Kumar and Rosewood Partners lack standing. Accordingly, Defendant's motion to dismiss the claims of Malvika Kumar and Rosewood Partners will be granted.

## IV.    MINDSPIRIT'S CLAIMS AGAINST EVALUESERVE

### A.    Breach of Contract

Mindspirit alleges that in April 2001, Evalueserve agreed to issue 480,000 Evalueserve stock options to Mindspirit. (Am. Cmplt. (Dkt. No. 19) at ¶ 20; id. at Ex. 1 (Dkt. No. 91-1)) Although Evalueserve issued those options to Mindspirit on April 17, 2001 (see id. at Ex. 1 (Dkt. No. 19-1)), Mindspirit claims that Evalueserve subsequently breached the parties' agreement regarding the 480,000 stock options "by transferring or reissuing the original nonqualified stock options from Mindspirit, LLC to Anil Kumar and Rajat Gupta." (Id. at ¶ 64)

8

The Stock Option Agreement between Evalueserve and Mindspirit ("Agreement")

provides that it "is subject to all the provisions of the [Equity Incentive] Plan, the provisions of

which are hereby made a part of your Option. . . . In the event of any conflict between the

provisions of your Option and those of the [Equity Incentive] Plan, the provisions of the [Equity

Incentive] Plan shall control." (Id., Ex. 1 (Dkt. No. 19-1) at 4)

The Equity Incentive Plan provides that "Nonstatutory Stock Options may be

granted to Employees, Directors and Consultants."[8]  (Id. at 13)

Under SEC Rule 701, securities – including stock options – issued to a consultant

need not be registered as long as the consultant is a natural person. See 17 C.F.R. § 230.701(c);

15 U.S.C. § 77b(a)(1) (defining "security" to include "any . . . option, or privilege on any

security"). In discussing consultants' eligibility for a stock option award, Evalueserve's Equity

Incentive Plan (the "Plan") addresses the interplay between SEC Rule 701 and Plan provisions as

follows:

> Prior to the Registration Date, a Consultant shall not be eligible for the grant of an
> Option Award if, at the time of grant, either the offer or the sale of the Company's
> securities to such Consultant is not exempt under Rule 701 because of the nature
> of the services that the Consultant is providing to the Company, or because the
> Consultant is not a natural person, or as otherwise provided by Rule 701, unless
> the Company determines that such grant need not comply with the requirements
> of Rule 701 and will satisfy another exemption under the Securities Act as well as
> comply with the securities laws of all other relevant jurisdictions.

(Am. Cmplt., Ex. 1 (Dkt. No. 19-1) at 14)

---

[8] Mindspirit argues that this list is not exhaustive, and that the Equity Incentive Plan authorizes
the issuance of non-statutory stock options to persons other than employees, directors, or
consultants. (Pltf. Br. (Dkt. No. 25) at 15 n.4)  Given that the Equity Incentive Plan repeatedly
states that only employees, directors, and consultants can receive non-statutory stock options,
(see, e.g., Am. Cmplt., Ex. 1 (Dkt. No. 19-1) at 8) ("[t]he persons eligible to receive Option
Awards are the Employees and Directors of and Consultants to the Company and its Affiliates)";
id. at 13 ("Nonstatutory Stock Options may be granted to Employees, Directors and
Consultants,")), this argument is not persuasive.

9

Given that Mindspirit is not a natural person, Evalueserve argues that the issuance of unregistered options to Mindspirit was prohibited both by Evalueserve's Equity Incentive Plan and federal securities law. (Def. Br. (Dkt. No. 23) at 15-16)

Evalueserve's argument is premised on its factual assertion that the options issued to Mindspirit were unregistered securities, however, and in order for this Court to make a finding as to whether these options were registered or unregistered, it would have to go outside the allegations of the Amended Complaint, which does not state whether the options issued to Mindspirit were registered or unregistered.[9]

In support of its motion to dismiss, Evalueserve has submitted Kumar and Gupta's notice of exercise forms. (Hauser Decl., Ex. C (Dkt. No. 24-3)) The notice of exercise forms may properly be considered by this Court on a motion to dismiss, because the Amended Complaint cites to, relies on, and makes representations about the notice of exercise forms. (See, e.g., Am. Cmplt. (Dkt. No. 19) at ¶¶ 40, 45; see also Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a prospectus upon which it solely relies and which is integral to the complaint, the defendant may produce the prospectus when attacking the complaint for its failure to state a claim, because plaintiff should not so easily be allowed to escape the consequences of its own failure."); Jenkins v. Virgin Atlantic Airways, Ltd., 46 F. Supp. 2d 271, 275 (S.D.N.Y. 1999) ("While Rule 12(b)(6) normally requires the Court to convert a motion to dismiss into a motion for summary judgment if 'matters outside the pleading are presented,' the Court[] does not have to do so if it relies on documents. . . which the plaintiff had knowledge of and relied upon in bringing the lawsuit.").

---

[9] During the initial pretrial conference, Plaintiffs' counsel represented that the options were registered securities. (Dec. 17, 2015 Conf. Tr. (Dkt. No. 36) at 2)

10

In their notice of exercise forms, both Kumar and Gupta acknowledge that Evalueserve's shares are not registered. (Hauser Decl., Ex. C (Dkt. No. 24-3) at 3, 6) ("I acknowledge that the Shares have not been registered under the Securities Act of 1933. . . .") The notice of exercise forms do not address, however, whether the options granted to Mindspirit, and then re-issued to Kumar and Gupta, were registered.

While it may well prove true that the options granted to Mindspirit, and then re-issued to Kumar and Gupta, were not registered, the Amended Complaint and the materials it references and relies on do not address the question. Accordingly, Defendant's motion to dismiss the breach of contract claim will be denied.

## B. Negligent and Careless Performance of Contractual Work

Under New York law, "claims based on negligent or grossly negligent performance of a contract are not cognizable." Pacnet Network Ltd. v. KDDI Corp., 78 A.D.3d 478, 479 (1st Dept. 2010). "It is a well-established principle that a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated. This legal duty must spring from circumstances extraneous to, and not constituting elements of, the contract. . . ." Clark-Fitzpatrick, Inc. v. Long Island R. Co., 70 N.Y.2d 382, 389 (1987) (internal citations omitted).

Here, Plaintiffs argue that Defendant "faile[d] to exercise reasonable skill and care in performing its obligations under the [Stock Option] Agreement," and thereby violated "both express and implied terms of performance contained in the Agreement." (Pltf. Opp. (Dkt. No. 25) at 16) Because Plaintiffs plead nothing more than a breach of Defendant's obligations under the Stock Option Agreement, Defendant's motion to dismiss Plaintiffs' claim for "negligent and careless performance of contractual work" will be granted.

11

## C.     Breach of Implied Duty of Good Faith and Fair Dealing

"New York law 'does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled.'" Ely v. Perthuis, No. 12 Civ. 1078(DAB), 2013 WL 411348, at *5 (S.D.N.Y. Jan. 29, 2013) (quoting Harris v. Provident Life & Accident Ins. Co., 310 F.3d 73, 81 (2d Cir. 2002)).

Mindspirit argues that the following allegations justify its breach of the implied covenant claim, because they do not flow directly from any contract between Mindspirit and Defendant: "that defendant pretended to be resolving the matter, that defendant made false representations about resolving the matter, [and that] defendant refused to accept outside legal or accounting assistance or opinions and then claimed it was not [its] problem." (Pltf. Br. (Dkt. No. 25) at 17) Assuming arguendo that such allegations go to an implied covenant claim, Plaintiffs have pled no facts suggesting that Evalueserve "pretended to be resolving the matter," "made false representations" to Mindspirit, or refused Mindspirit's offer of legal or accounting assistance. Indeed, Plaintiffs plead no facts concerning communications between Evalueserve and Mindspirit after the Stock Option Agreement was entered into. While the Amended Complaint contains numerous allegations concerning Evalueserve's communications with Kumar, Gupta, and Gupta's accountant, these communications cannot be regarded as having taken place with Mindspirit. The Amended Complaint pleads that Kumar and Gupta have no ownership interest in Mindspirit and "are not members or managers of Mindspirit." (See Am. Cmplt. (Dkt. No. 19) at ¶¶ 14, 19)

In any event, the allegations that Plaintiffs cite in support of their implied covenant claim are not distinct from their breach of contract claim. "Both claims relate to the

12

same events" – that the options were re-issued in Kumar and Gupta's names, instead of in the name of Mindspirit. Accordingly, "the breach of covenant claim must be dismissed as duplicative." Ely, 2013 WL 411348, at *5.

### D.     Breach of Fiduciary Duty

Because Evalueserve is a Bermuda entity (see Am. Cmplt. (Dkt. No. 19) at ¶ 4), Plaintiffs' breach of fiduciary duty claim requires this Court to consider choice of law.

"New York choice of law rules apply the internal affairs doctrine, which dictates that the law of the state of incorporation governs the adjudication of a corporation's "'internal affairs," including questions as to the relationship between the corporation's shareholders and its directors.'" Winn v. Schafer, 499 F.Supp.2d 390,393 (S.D.N.Y. 2007) (quoting Galef v. Alexander, 615 F.2d 51, 58 (2d Cir. 1980)). Accordingly, Bermuda law governs Plaintiff's breach of fiduciary duty claim.

"[T]he analysis of . . . breach of fiduciary duty claims . . . is substantively the same under Bermuda law . . . and New York law," however. In re Stillwater Capital Partners Inc. Litig., 851 F. Supp. 2d 556, 570 (S.D.N.Y. 2012) "'In the absence of substantive difference . . . , a New York court will dispense with choice of law analysis; and if New York law is among the relevant choices, New York courts are free to apply it.'" Id. (quoting Int'l Bus. Machs. Corp. v. Liberty Mut. Ins. Co., 363 F.3d 137, 143 (2d Cir. 2004)).

Under New York law, "[a] corporation does not owe a fiduciary duty to shareholders." Id. at 573 (footnote omitted). Accordingly, Evalueserve – as a corporation – does not owe a fiduciary duty to Mindspirit, one of its shareholders. (Id.)

Defendant's motion to dismiss Plaintiffs' breach of fiduciary duty claim will be granted.

13

## E.    Fraud

The Amended Complaint contains two causes of action sounding in fraud:

"fraudulent concealment & misrepresentation by a fiduciary," and "actual & constructive fraud

in contract and course of conduct." Where a party alleges fraud, "the complaint must: (1)

specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3)

state where and when the statements were made, and (4) explain why the statements were

fraudulent." Mills v. Polar Molecule Corp., 12 F.3d 1170, 1175 (2d Cir. 1993) (citing Cosmas v.

Hassett, 886 F.2d 8, 11 (2d Cir. 1989)).

Here, Plaintiffs have not identified any allegedly fraudulent communication with

the requisite level of particularity. The Amended Complaint alleges that "Evalueserve's Marc

Vollenweider, Alok Aggarwal, and Nand Gangwani made [the following] material

misrepresentations of fact and concealed [the following] facts":

- a.) Claiming that Rajat Gupta verbally confirmed a transfer of Mindspirit, LLC stock options via a telephone call in or around 2002[;]

- b.) Claiming that the stock options had originally been granted in individual names, which is inconsistent with the parties['] Agreement listing Mindspirit as the sole Optionholder[;]

- c.) Concealment of Evalueserve's wrongful transfer and reissuance of the stock options in an effort to downplay Evalueserve's noncompliance, and despite depriving plaintiffs of their rights and property[;]

- d.) Claiming that [Bermuda Monetary Authority] approval would be required for transfer or reissuance [of the options] in or around 2011[;]

- e.) Concealing that there had been unilateral changes and modifi[c]ations made by the Defendant to the identity of the Optionholder in the parties['] Agreement and the identity of the Optionholders from Mindspirit to Rajat Gupta and Anil Kumar[;]

- f.) Refusing to allow plaintiffs any participation in the 2013-2014 share buyback available to all other shareholders and optionholders by sending them

14

> notification a week after the buyback had occurred, and without any reason or excuse for not permitting plaintiffs['] participation[;] and
>
> g.) Concealing the fact that defendant unilaterally redrafted and revised certain documents altering plaintiffs['] rights without any notice or consent by plaintiffs.

(Am. Cmplt. (Dkt. No. 19) at ¶ 95; id. at ¶ 104 (citing ¶ 95) (internal citations omitted))

Mindspirit further alleges that "Evalueserve, Vollenweider, Gangwani, and Aggarw[a]l now misrepresent that plaintiffs are consultants[,] . . . which has led to significant damage to plaintiffs by depriving them of their rights and property." (Id. at ¶ 106)

These allegations are not sufficient to plead a fraud claim. Plaintiffs have not specified (1) which individual made false statements, (2) when the false statements were made, (3) where the false statements were made, or (4) to whom they were made. See Louis Hornick & Co., Inc. v. Darbyco, Inc., No. 12 Civ. 5892(LTS), 2013 WL 3819643, at *4 (S.D.N.Y. July 23, 2013) (dismissing fraud claim for lack of particularity where the plaintiff alleged that the defendant had intentionally misrepresented to plaintiff that quality control issues were resolved in order to induce the plaintiff to act, but plaintiff had not "identif[ied] any specific statements made by any of the Defendants or their agents, or when, where and by whom those statements were made").

Plaintiffs have likewise not pled facts demonstrating that they reasonably relied on Defendant's allegedly false or misleading statements. "Under New York law, a plaintiff asserting fraud must establish that '(1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance.'" Helios Int'l S.A.R.L. v. Cantamessa USA, Inc., No. 12 Civ. 8205, 2013 WL 3943267, at *10 (S.D.N.Y. July 31, 2013) (quoting Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc., 98 F.3d 13, 19

15

(2d Cir. 1996)).  Here, Plaintiffs have not pled facts sufficient to demonstrate that they acted in reliance on a misrepresentation made by Defendant.  Indeed, the Amended Complaint's allegations concerning reliance are contradictory.

For example, Mindspirit alleges that it "relied on erroneous and improper instruction from Evalueserve, and thus completed and submitted the individual compliance forms, notice of exercise, and exercise paperwork in the personal names, which ultimately resulted in a denial of exercise by the [Bermuda Monetary Authority]." (Am. Cmplt. (Dkt. No. 19) at ¶ 97; see also id. at ¶ 105)  At another point in the Amended Complaint, however, Plaintiffs allege that it was Kumar and Gupta – and not Mindspirit, its members, or its managers – who completed the notice of exercise and compliance forms.  (Id. at ¶ 41)  Kumar and Gupta are not plaintiffs here, and given the Amended Complaint's allegations that they were not owners, members, or managers of Mindspirit (id. at ¶¶ 14, 19), any actions they took in reliance on Evalueserve's statements cannot provide the basis for a fraud claim asserted by Mindspirit.

Plaintiffs also allege that they "relied upon [Defendant's] misrepresentations and omissions of fact, and were intentionally made unaware of facts concealed by Evalueserve [], [and] had plaintiffs known or been aware of the same facts, plaintiffs could have arguably avoided injury and damage suffered by plaintiffs." (Id. at ¶ 98)  But Plaintiffs do not state what actions they took, or did not take, in reliance on Defendant's alleged false and misleading statements.

Moreover, to the extent that this allegation could be read to assert that Evalueserve falsely indicated that it intended to provide the options to Mindspirit, any such allegation would be insufficient.  "[I]ntentionally-false statements . . . indicating [a defendant's] intent to perform under the contract" are "not sufficient to support a claim of fraud under New

16

York law." Bridgestone/Firestone, Inc., 98 F.3d at 19-20 (citing McKernin v. Fanny Farmer

Candy Shops, Inc., 176 A.D.2d 233, 234 (2d Dept. 1991); Met. Transp. Auth. v. Triumph

Advertising Prods., 116 A.D.2d 526, 527 (1st Dept. 1986)).

    To the extent that the Amended Complaint pleads specific facts in support of

Plaintiffs' fraud claims, those facts are the same facts underlying Plaintiffs' breach of contract

claim, and all relate to Plaintiffs' claim that Defendant wrongfully re-issued the options in the

names of Kumar and Gupta. "New York courts have long held that 'a cause of action for fraud

does not arise when the only fraud charged relates to a breach of contract,'" however.  Helios

Int's S.A.R.L., 2013 WL 3943267, at *11 (quoting Non-Linear Trading Co. v. Braddis Assocs.,

243 A.D.2d 107, 118 (1st Dept. 1998)).  "To maintain a fraud claim when a contract governs the

relationship between two parties, 'a plaintiff must either (i) demonstrate a legal duty separate

from the duty to perform under the contract; or (ii) demonstrate a fraudulent misrepresentation

collateral or extraneous to the contract; or (iii) seek special damages that are caused by the

misrepresentation and unrecoverable as contract damages.'" Telesco v. Neuman, No. 14 CV

3480(VB), 2015 WL 2330166, at *3 (S.D.N.Y. Mar. 11, 2015) (quoting Bridgestone/Firestone,

Inc., 98 F.3d at 20).

    Evalueserve did not have any legal duty to Mindspirit separate from its duty to

perform under the Stock Option Agreement, however, and the misrepresentations and omissions

Plaintiffs allege all relate to Evalueserve's performance under that agreement.

    Finally, the Amended Complaint's claims for fraudulent concealment by a

fiduciary and constructive fraud require Plaintiffs to plead facts demonstrating that Evalueserve

owed a special duty to Mindspirit.  See Klembczyk v. Di Nardo, 265 A.D.2d 934, 936 (4th Dept.

1999) ("The elements of constructive fraud as the same as those for actual fraud, except that the

element of scienter is replaced by a fiduciary or confidential relationship between the parties.");

P.T. Bank Central Asia v. ABN AMRO Bank N.V., 301 A.D.2d 373, 376 (1st Dept. 2003) (in

addition to the usual fraud elements, "[a] cause of action for fraudulent concealment requires . . .

an allegation that the defendant had a duty to disclose material information and that it failed to

do so."). Although Mindspirit claims that Evalueserve owed it a fiduciary duty (see Am. Cmplt.

(Dkt. No. 19) at ¶¶ 94, 103), as explained above, no such duty existed.

Defendant's motion to dismiss Plaintiffs' fraud claims will be granted.

**F.     Unjust Enrichment**

"[I]n order to adequately plead [an unjust enrichment] claim, the plaintiff must

allege 'that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against

equity and good conscience to permit the other party to retain what is sought to be recovered.'"

Georgia Malone & Co., Inc. v. Rieder, 19 N.Y.3d 511, 516 (2012).  An unjust enrichment claim

"rests upon the equitable principle that a person shall not be allowed to enrich himself unjustly at

the expense of another."   IDT Corp. v. Morgan Stanley Dean Witter & Co., 12 N.Y.3d 132, 142

(2009).  Here, Defendant argues that Plaintiffs' unjust enrichment claim is duplicative of their

breach of contract claim, and must therefore be dismissed.  (Def. Br. (Dkt. No. 23) at 24)

""'[T]he existence of a valid and enforceable written contract governing a

particular subject matter ordinarily precludes recovery in quasi contract [i.e., unjust enrichment]

for events arising out of the same subject matter.'""  MacDraw, Inc. v. CIT Group Equipment

Financing, Inc., 157 F.3d 956, 964 (2d Cir. 1998) (quoting U.S. East Telecomms., Inc. v. U.S.

West Comms. Servs., Inc., 38 F.3d 1289, 1296 (2d Cir.1994) (quoting Clark-Fitzpatrick, Inc., 70

N.Y.2d at 388)) (alterations in MacDraw). However, "if the validity or enforceability of a

contract is in doubt or uncertain, claims of unjust enrichment may survive a motion to dismiss."

Gao v. JP Morgan Chase & Co., No. 14 Civ. 4281(PAC), 2015 WL 3606308, at \*5 (S.D.N.Y. June 9, 2015) (internal quotation marks omitted).

Here, Defendant has argued (see Def. Br. (Dkt. No. 23) at 15-16) that any contractual agreement to award Evalueserve stock options to Mindspirit is barred both by Evalueserve's Equity Incentive Plan and by federal securities law. Accordingly, "the validity or enforceability of [the alleged agreement between Evalueserve and Mindspirit under which Mindspirit would receive Evalueserve stock options] is in doubt or uncertain." Gao, 2015 WL 3606308, at \*5. Accordingly, Plaintiffs' unjust enrichment claim will not be dismissed on the grounds that it is duplicative of their breach of contract claim. See id.

## G. Gross Negligence

"Under New York law, . . . gross negligence is a tort differing from ordinary negligence in kind rather than degree. Gross negligence implies willful or intentional misconduct." Cauble v. Mabon Nugent & Co., 594 F. Supp. 985, 993 (S.D.N.Y. 1984). Gross negligence or willful misconduct requires "facts that amount to malice, recklessness, or callous indifference." Morgan Stanley & Co. Inc. v. Peak Ridge Master SPC Ltd., 930 F. Supp. 2d 532, 545 (S.D.N.Y. 2013); see also In re Enron Corp., 292 B.R. 752, 767-68 (S.D.N.Y. 2003) ("Under New York law, a mistake or series of mistakes alone, without a showing of recklessness, is insufficient for a finding of gross negligence."). Even self-dealing actions, without a showing of egregiousness, will not qualify as "gross negligence." Morgan Stanley & Co. Inc., 930 F. Supp. 2d at 545 ("A party acting in their own economic self-interest is not enough to constitute gross negligence or willful misconduct.") Finally, where, as here, "the setting is . . . a contract between two sophisticated parties[,] 'the conduct must evince a reckless disregard for the rights of others, or be of a kind that smacks of intentional wrongdoing.'" Deutsche Lufthansa AG v.

19

Boeing Co., No. 06 CV 7667(LBS), 2007 WL 403301, at *3 (S.D.N.Y. Feb. 2, 2007) (quoting Indus. Risk Ins. v. Port Auth. of N.Y. and N.J., 387 F. Supp. 2d 299, 305 (S.D.N.Y. 2005)).

Considered in the light most favorable to Plaintiffs, the Amended Complaint pleads facts demonstrating – at best – that Defendant committed an error in re-issuing the options to Kumar and Gupta. The pleaded facts do not plausibly demonstrate that Defendant acted recklessly or engaged in intentional wrongdoing. In this regard, the numerous interconnections among Kumar, Gupta, Mindspirit, and its members cannot be ignored.

As an initial matter, Evalueserve entered into the contract with Mindspirit at the request of Kumar and Gupta. Kumar was also married to one of the members of Mindspirit, and Gupta was both a member of Rosewood – which in turn was a member of Mindspirit – and shared a business address with Rosewood. (Am. Cmplt. (Dkt. No. 19) at ¶¶ 19, 23) Although the Amended Complaint contains conclusory allegations that Defendant acted purposefully and willfully to deprive Mindspirit of its rights, Plaintiffs have not pled facts making these allegations plausible, nor have they demonstrated that Defendant's actions constitute more than a mere error.

In any event, Plaintiffs cannot seek recourse in tort law where, as here, the alleged injury is the subject of a breach of contract claim. Baguer v. Spanish Broadcasting Sys., Inc., No. 04-CV-8393 (KMK), 2007 WL 2780390, at *3 (S.D.N.Y. Sept. 20, 2007) ("Under New York law, absent a breach of legal duty independent of the contract itself, a plaintiff has no cause of action in tort for a breach of contract."); see also Fillmore East BS Fin. Subsidiary LLC v. Capmark Bank, No. 11 Civ. 4491(PGG), 2013 WL 1294519, at *16 (S.D.N.Y. Mar. 30, 2013) ("[D]efendant may be liable in tort when it has breached a duty of reasonable care distinct from its contractual obligations, or when it has engaged in tortious conduct separate and apart from its

failure to fulfill its contractual obligations." (quoting N.Y. Univ. v. Cont'l Ins. Co., 87 N.Y.2d 308, 316 (1995))), aff'd, 552 Fed. Appx. 13 (2d Cir. 2014). "[A]llegations of improper motives alone" – such as Mindspirit's allegations that Evalueserve engaged in self-dealing – "will not convert a simple breach of contract into a tortious action." Baguer, 2007 WL 2780390, at *3.

Defendant's motion to dismiss Plaintiffs' claim for gross negligence and willful misconduct will be granted.

## H. Detrimental Reliance – Promissory Estoppel

A promissory estoppel claim requires "'1) a clear and unambiguous promise; 2) reasonable and foreseeable reliance on that promise; and 3) injury to the relying party as a result of the reliance.'" Gas Natural, Inc. v. Iberdrola, S.A., 33 F. Supp. 3d 373, 378 (S.D.N.Y. 2014) (quoting Kaye v. Grossman, 202 F.3d 611, 615 (2d Cir. 2000)). "Where a plaintiff also alleges breach of a contract, a promissory estoppel claim is duplicative of a breach of contract claim unless the plaintiff alleges that the defendant had a duty independent of any arising out of the contract." Underdog Trucking, LLC, Reggie Anders v. Verizon Servs. Corp., No. 09 Civ. 8918(DLC), 2010 WL 2900048, at *6 (S.D.N.Y. July 20, 2010) (citing Celle v. Barclays Bank P.L.C., 48 A.D.3d 301, 302 (1st Dept. 2008)).

Here, as discussed above, Plaintiffs have not alleged facts demonstrating that Evalueserve had a duty independent of the contract. Plaintiffs have also not alleged, other than in conclusory terms, that they took any detrimental action in reliance on a promise that Evalueserve made. (See, e.g., Am. Cmplt. (Dkt. No. 19) at ¶ 130 ("Plaintiffs reasonably and foreseeably relied on [Evalueserve's] promises[.]"))

Defendant's motion to dismiss Plaintiffs' promissory estoppel claim will be granted.

## I.     Securities Fraud

"Breaches of contract generally fall outside the scope of the securities laws."

Capital Mgmt. Select Fund Ltd. v. Bennett, 680 F.3d 214, 225 (2d Cir. 2012). However,

"[p]rivate actions may succeed under Section 10(b) if there are particularized allegations that the

contract itself was a misrepresentation, i.e., the plaintiff's loss was caused by reliance upon the

defendant's specific promise to perform particular acts while never intending to perform those

acts." Id. at 226 (citing Wharf (Holdings) Ltd. v. United Int'l Holdings, Inc., 532 U.S. 588

(2001); Ouaknine v. MacFarlane, 897 F.2d 75, 81 (2d Cir. 1990); Luce v. Edelstein, 802 F.2d 49,

55-56 (2d Cir. 1986)). "Either the alleged breach must be of a character that alone provides

'strong circumstantial evidence' of an intent to deceive at the time of contract formation, or there

must be allegations of particularized facts supporting a 'cogent and compelling' inference of that

intent." Id. (internal citations omitted).

Here, Plaintiffs do not allege that Evalueserve did not intend to provide the

options to Mindspirit when the Stock Option Agreement was entered into.  Any such claim

would be frivolous, given that it is undisputed that Evalueserve did in fact issue the options to

Mindspirit – as the Stock Option Agreement provided – on November 7, 2011.  To the extent

that Plaintiffs allege that Evalueserve acted "with wrongful intent" and made false statements

and material misrepresentations after the Stock Option Agreement was entered into (see Am.

Cmplt. (Dkt. No.19) ¶¶ 134-36, 138), such allegations do not support a claim for securities fraud

under Section 10(b).

Mindspirit has also failed to plead its securities fraud claim with sufficient

particularity.  "In order to survive a motion to dismiss, a complaint that alleges securities fraud

must 'specify each statement alleged to have been misleading, [and] the reason or reasons why

22

the statement is misleading.'" Shaffer Smith, 2424, LLC v. Foster, 14-Cv-5918 (SHS), 2016 WL 901301, at *2 (S.D.N.Y. Mar. 3, 2016) (citing ECA & Local 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co., 553 F.3d 187, 196 (2d Cir. 2009)). Plaintiffs' pleading does not meet this standard. The Amended Complaint merely alleges that "Evalueserve" has "made and continues to make several and repeated untrue statements of material fact" and "omitted and continues to omit material facts in statements and representations made to plaintiffs to date. . . ." (Am. Cmplt. (Dkt. No. 19) at ¶¶ 134-35)  The Amended Complaint does not specify the speakers, times, or places of these allegedly misleading statements, however. See ECA, Local 134 IBEW Joint Pension Tr. of Chi., 553 F.3d at 196 (noting that "[a]ny complaint alleging securities fraud must satisfy the heightened pleading requirements of . . . Fed. R. Civ. P. 9(b)"); Mills, 12 F.3d at 1175 (Rule 9(b) requires that a complaint must "identify the speaker" of a fraudulent statement and "state where and when the statements were made").

Defendant's motion to dismiss Plaintiffs' Section 10(b) securities fraud claim will be granted.

## J.   Equitable Estoppel

"The doctrine of equitable estoppel applies where it would be unjust to allow a defendant to assert a statute of limitations defense." Zumpano v. Quinn, 6 N.Y.3d 666, 673 (2006).  Equitable estoppel is not a separate cause of action, however.  Where applicable, the doctrine merely prevents a defendant from contending that a plaintiff's claims are time-barred. Accordingly, Plaintiffs' equitable estoppel claim will be dismissed.

## V.   INDISPENSABLE PARTIES

Evalueserve argues – without citing any legal authority – that Kumar and Gupta are indispensable parties under Federal Rule of Civil Procedure 19.  (Def. Br. (Dkt. No. 23) at

23

27-28)  The stock options issued to Kumar and Gupta expired on April 6, 2016 (see Dkt. Nos.

35, 38), however, and Defendant has presented no theory as to how they are indispensable parties

for purposes of this action.

## CONCLUSION

For the reasons stated above, Defendant's motion to dismiss is granted as to

Malvika Kumar and Rosewood Partners.  Defendant's motion to dismiss is denied as to Plaintiff

Mindspirit's breach of contract and unjust enrichment claims, but is granted as to all of Plaintiff

Mindspirit's remaining claims.  The Clerk of the Court is instructed to terminate the motion

(Dkt. No. 22).

Dated:  New York, New York
          September 24, 2016

                                                SO ORDERED.

                                                Paul G. Gardephe
                                                United States District Judge