UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MINDSPIRIT, LLC,

                              Plaintiff,                    **ORDER**

             - against -                               15 Civ. 6065 (PGG)

EVALUESERVE LTD.,

                              Defendant.

PAUL G. GARDEPHE, U.S.D.J.:

             In this breach of contract action, Plaintiff Mindspirit, LLC claims that Defendant

Evalueserve Ltd. violated an agreement to issue 480,000 stock options to Mindspirit.  As an

affirmative defense, Evalueserve has argued that the parties orally amended their contract such

that the options would be issued to non-parties Rajat Gupta and Anil Kumar instead of

Mindspirit.  (Answer (Dkt. No. 47) at 10 ¶ 6; Second Proposed Jury Instructions (Dkt. No. 125)

at 10))  As an alternative affirmative defense, Evalueserve has argued that Mindspirit is estopped

from claiming breach of contract because Evalueserve reasonably relied on Gupta's request to

transfer Mindspirit's stock options to Gupta and Kumar.  (Answer (Dkt. No. 47) at 11 ¶ 8;

Second Proposed Jury Instructions (Dkt. No. 125) at 9))

             The case proceeded to trial on October 2, 2019.  At the close of the evidence, the

Court ruled that no reasonable juror could find for Evalueserve on either affirmative defense.

(Tr. 1191-1203)[1]  Accordingly, the Court did not instruct the jury on Evalueserve's oral

amendment and estoppel defenses.  (Tr. 1201-03)  The jury returned a verdict in favor of

---

[1]  Citations to trial transcripts ("Tr.") correspond to the pagination generated by the court
reporter.  Citations to page numbers of other docketed material correspond to the pagination
generated by this District's Electronic Case Files ("ECF") system.

Mindspirit, finding Evalueserve liable for breach of contract.  (Verdict (Dkt. No. 153))  On

October 24, 2019, the Court entered judgment in favor of Mindspirit in the amount of

$7,480,457.29.  (Judgment (Dkt. No. 155))

On November 21, 2019, Evalueserve moved for a new trial pursuant to Fed. R.

Civ. P. 59(a)(1)(A).  (Def. Br. (Dkt. No. 158))  Evalueserve argues that it is entitled to a new trial

because:

1.  The court erred in holding that no reasonable jury could find that stock options were
    issued to Gupta and Kumar.

2.  Because a reasonable jury could have found that Evalueserve issued stock options to
    Kumar and Gupta, the court erred in not instructing the jury on the affirmative
    defenses of oral amendment and estoppel.

3.  Evalueserve was prejudiced by the court's failure to instruct the jury on estoppel and
    oral amendment.

(Id. at 5-12)  For the reasons stated below, Evalueserve's new trial motion will be denied.

## BACKGROUND

## I.   PROCEDURAL HISTORY

The Complaint was filed on August 3, 2015.  (Cmplt. (Dkt. No. 1))  On February

23, 2016, Evalueserve moved to dismiss.  (Dkt. No. 22)  In a September 24, 2016 order (Dkt. No.

45), the Court granted Evalueserve's motion to dismiss as to all of Mindspirit's claims, except

for breach of contract and unjust enrichment.  On July 14, 2017, Evaluserve moved for summary

judgment on Mindspirit's remaining claims.  (Dkt No. 73)  In a September 30, 2018

Memorandum Opinion & Order (Dkt. No. 90), this Court granted Evalueserve summary

judgment on Mindspirit's unjust enrichment claim.  Evalueserve's summary judgment motion was otherwise denied.[2]

Mindspirit's breach of contract claim – its sole surviving claim – proceeded to trial on October 2, 2019.  (Tr. (Dkt. No. 139))  In its proposed jury instructions, Evalueserve asked the Court to charge the jury on Evalueserve's affirmative defenses of oral amendment and estoppel.  (Proposed Jury Instructions (Dkt. No. 102) at 77-78; Second Proposed Jury Instructions (Dkt. No. 125) at 9-10)

Mindspirit argued that the Court "should not instruct the jury on the law of oral modifications and should bar [Evalueserve] from arguing that such modifications took place." (Pltf. Pretrial Br. (Dkt. No. 103) at 15)  Mindspirit also argued that Evalueserve's "estoppel defense [was] merely a recharacterization of its . . . oral modification defense," and that therefore "any instruction or argument concerning estoppel should be precluded."[3]  (Id. at 18-19)

The Court did not rule on Evalueserve's affirmative defenses of oral amendment and estoppel – and the propriety of jury instructions concerning these affirmative defenses – until the close of the evidence.  (Tr. 1191-1203)

## II.   THE EVIDENCE AT TRIAL[4]

In 2001, Marc Vollenweider and Alok Aggarwal approached Rajat Gupta about becoming an angel investor in Evalueserve, an India-based start-up company that Vollenweider

---

[2]  Familiarity with the September 24, 2016 order (Dkt. No. 45) and the September 30, 2018 Memorandum Opinion & Order (Dkt. No. 90) is assumed.

[3]  Evalueserve errs in arguing that the Court sua sponte raised the issue of whether jury instructions concerning oral amendment and estoppel were appropriate.  See Def. Br. (Dkt. No. 158) at 4.  Mindspirit had moved to preclude these defenses.  (Pltf. Pretrial Br. (Dkt. No. 103) at 15, 18-19)

[4]  For purposes of this Order, the Court focuses only on the evidence relevant to Evalueserve's motion for a new trial.

and Aggarwal co-founded.  (Tr. 357-58 (R. Gupta))  Evalueserve was modeled after McKinsey

& Company, a leading management consulting firm where Vollenweider had come to know

Gupta, who was then McKinsey's Managing Director.  (Tr. 344, 358 (R. Gupta))  Vollenweider

and Aggarwal asked Gupta for a $100,000 investment, and Gupta agreed.  (Tr. 358 (R. Gupta))

Anil Kumar, who had worked with Gupta and Vollenweider at McKinsey, also offered to invest

in the start-up.  (Tr. 359 (R. Gupta); Tr. 329-30 (M. Kumar))  Evalueserve wanted to limit the

number of outside investors, however, and rejected Kumar's offer.  (Tr. 359 (R. Gupta))  Kumar

then asked Gupta if he could participate in Gupta's $100,000 investment by contributing

$25,000.  (Tr. 359-60 (R. Gupta))  Gupta and Evalueserve agreed to that arrangement.  (Tr. 360

(R. Gupta))

   Mindspirit was created to facilitate Gupta and Kumar's joint investment in

Evalueserve.  (Tr. 359 (R. Gupta))  Mindspirit had two owners:  Rosewood Partners held a 75

percent share in Mindspirit, and Malvika Kumar – Kumar's wife – held a 25 percent share.  (Tr.

329 (M. Kumar), 359-60, 385 (R. Gupta))  Rosewood Partners was a "family partnership" owned

by Gupta's children.  (Tr. 340-41 (R. Gupta))  Accordingly, neither Gupta nor Kumar held a

direct ownership stake in Mindspirit.  (Tr. 385 (R. Gupta))

   In April 2001, Mindspirit and Evalueserve agreed that Mindspirit would invest

$100,000 in Evalueserve in exchange for 180,000 shares of Evalueserve stock and 480,000 stock

options.  (PX 1 (Stock Option Grant Notice), PX 2 (Schedule A to Securities Purchase

Agreement); Tr. 340 (R. Gupta))  The parties' agreement is reflected in a Stock Option Grant

Notice, Stock Option Agreement, Equity Incentive Plan, and Securities Purchase Agreement.

(PX 1, PX 2)  As part of the agreement, Gupta agreed to "open doors" for Evalueserve and to

"help," "guide," and "advise" the start-up, including by providing "references" and "introductions" for the new company.  (Tr. 877-78, 895 (Aggarwal))

In April 2001, Evalueserve issued a Stock Option Grant Notice and Stock Option Agreement to Mindspirit that addressed, inter alia, (1) the vesting of the Evalueserve stock options; (2) the number of stock options Mindspirit would receive and the exercise price; (3) the method of payment; (4) whether Mindspirit could "exercise [its] Option only for whole shares of Common Stock"; (5) securities law compliance; (6) the term of the options; (7) how the options were to be exercised; and (8) the transferability of the options.  (PX 1 (Stock Option Grant Notice and Stock Option Agreement))

The Equity Incentive Plan annexed to the Stock Option Grant Notice provides that any amendments to the stock option award must be in writing:

> **Amendment of Option Awards.**  [Evalueserve's] Board at any time, and from time to time, may amend the terms of any one or more Option Awards; provided, however, that under the rights under any Option Award shall not be impaired by any such amendment unless (i) [Evalueserve] requests the consent of the Participant and (ii) the Participant consents in writing.

(PX 1 (Equity Incentive Plan attachment to Stock Option Grant Notice) at DEF0000039; Tr. 1018 (Aggarwal) (testifying that Mindspirit was the "Participant" referenced in the Equity Incentive Plan))

Aggarwal – Evalueserve's chairman at all relevant times (Tr. 937, 952, 960 (Aggarwal)) – testified that, during a September 2001 telephone call, Gupta asked that Mindspirit's 480,000 options be recorded in the names of Gupta and Anil Kumar instead of in Mindspirit's name, and that Aggarwal agreed to make that change.  (Tr. 899 (Aggarwal)) According to Aggarwal, Gupta asked that 360,000 options be issued to Gupta and 120,000 to Anil Kumar.  (Id.)

Gupta, by contrast, testified that he never asked Aggarwal or anyone else at Evalueserve to transfer Mindspirit's options to himself and Kumar.  (Tr. 341, 366, 373 (R. Gupta))  According to Gupta, "Rosewood was created as a family partnership so [he] could pass on some investments and assets to [his] children," and investments in Rosewood were "a one-way street."  (Id.)  Gupta made "many, many investments" in the name of Rosewood and never once had the investments "changed from Rosewood to [his] own personal name."  (Id.)

A November 7, 2001 Evalueserve board resolution (the "Board Resolution") received in evidence states that 360,000 Evalueserve stock options will be issued to Gupta and 120,000 Evalueserve stock options will be issued to Kumar.  (PX 19 (Board Resolution))  The Board Resolution makes no mention of Mindspirit.  (Id.; Tr. 906 (Aggarwal))  The Board Resolution lists the number of the options granted, the strike price, the vesting schedule, and the expiration date.  (PX 19 (Board Resolution))  It does not address other matters set forth in the Stock Option Grant Notice and Stock Option Agreement, including the method of payment; whether Mindspirit could "exercise [its] Option only for whole shares of Common Stock"; securities law compliance; how the options were to be exercised; and the transferability of the options.  (PX 1 (Stock Option Grant Notice and Stock Option Agreement); PX 19 (Board Resolution))  At trial, the parties stipulated that Evalueserve did not deliver copies of the Board Resolution to Mindspirit, Gupta, the Kumars, or Rosewood at any time prior to this litigation. (PX 85 ¶¶ 12-13) ("Evalueserve did not deliver copies of its Board Resolution[] dated November 7, 2001 . . . to Mindspirit[,] . . . Rajat Gupta, Anil Kumar, Malvika Kumar, or Rosewood Partners prior to this litigation.").

Aggarwal testified that Evalueserve followed a multi-step process when issuing stock options.  The first step in the process was for Evalueserve to send a stock option grant

notice to the prospective option holder.  The option holder would then sign the stock option grant notice and return it to Evalueserve.  Only after this exchange would the Evalueserve board pass a resolution granting the stock option.  At trial, Chairman Aggarwal described the process as follows:

> Let me explain the process, how it went at least during the first ten years.
>
> We would issue a particular stock option notice. . . . . Then we would expect the person who was receiving it would sign it and send it back to us.  We would then pass a board resolution that these options have been granted.

(Tr. 898 (Aggarwal))

Later in his testimony, Aggarwal described the stock option grant process in a similar fashion:

> Typically, this particular kind of a grant notice would be sent out to the option holder.  At that particular point time that particular grant would be entered in what we used to call an options register which was an option spreadsheet.  It was basically an Excel spreadsheet.  At that particular point after that we would receive the option holder to sign it.  Then we would pass a board resolution. . . .

(Tr. 974-75 (Aggarwal); <u>see also</u> Tr. at 978-79 (Aggarwal))

Aggarwal also testified that every Evalueserve option holder received a stock option grant notice:

> THE COURT:  With respect to this document that we're looking at, Plaintiff's Exhibit One, the stock option grant notice, does every recipient of options from Evalueserve get a grant notice similar to the one we're looking at?
>
> THE WITNESS:  Yes, at least during the period I was there.

(Tr. 893 (Aggarwal))

Aggarwal admitted that these steps had not been followed with respect to the Evalueserve stock options he claimed had been issued to Gupta and Kumar.  (Tr. 906-07, 978-79 (Aggarwal))  Indeed, at trial the parties stipulated that "Evalueserve has no evidence that a Stock

Option Grant Notice reflecting Rajat Gupta [or] . . . Anil Kumar as an option holder for Evalueserve options ever existed."  (PX 85 ¶¶ 10-11; Tr. 393 (quoting PX85))  Evalueserve's chief financial officer Nand Gangwani testified that he had never seen a stock option grant notice in Gupta's or Kumar's name (Tr. 750, 759 (Gangwani)), and Marc Vollenweider – Evalueserve's chief executive officer (Tr. 699 (Vollenweider)) – testified that he had no knowledge of Evalueserve stock option grant notices ever having been issued to Gupta or Kumar.  (Tr. 689 (Vollenweider))  In email, Evalueserve employees discussed their inability to find Evalueserve stock option grant notices that had been issued to Gupta and Kumar.  (PX 74, PX 77)

Chairman Aggarwal testified that it was a "mistake" not to have issued stock option grant notices to Gupta and Kumar, stating that it "slipped our mind" and that "[i]n the first few years of a start-up . . . you do make some errors of these kinds unfortunately."  (Tr. 907 (Aggarwal))  He also blamed Gupta for the mistake, asserting that – during the September 2001 telephone call – "Gupta . . . said, look, it's OK as long as you put it to the board resolution and you get it all approved I'm okay with it."  (Id.)

## III.   BENCH RULING CONCERNING EVALUESERVE'S AFFIRMATIVE DEFENSES OF ORAL AMENDMENT AND EQUITABLE ESTOPPEL

On October 10, 2019, at the close of the evidence, the Court ruled that no reasonable juror could find for Evalueserve on either its oral amendment or equitable estoppel affirmative defense, and therefore Evalueserve was not entitled to a jury charge that presented these defenses to the jury.  The Court's bench ruling, in relevant part, is set forth below:

> In this action, plaintiff Mindspirit, [LLC], asserts a claim for breach of contract against defendant Evalueserve Ltd.  The evidence at trial has shown that the parties entered into an agreement in 2001 in which Mindspirit agreed to make a $100,000 investment in Evalueserve – then a start-up company – in exchange for 180,000 shares of Evalueserve stock and 480,000 stock options.  [PX 1, PX 2]  The essence of Mindspirit's claim in this lawsuit is that Evalueserve breached the parties' agreement by preventing Mindspirit from exercising those stock options many years later.

On October 4, 2019 – the third day of this trial – I asked the lawyers to submit revised jury instructions that "more properly reflect[] what the evidence is" in [this] case.  [Tr. 536]  That same day, I directed the parties to submit briefing concerning the propriety of Evalueserve's proposed jury instructions concerning its affirmative defenses of oral amendment and estoppel.  [Dkt. No. 128]  Mindspirit and Evalueserve filed letter briefs on October 6, 2019.  [Dkt. Nos. 126, 127]  In addition, Evalueserve filed a letter brief on October 7, 2019 addressing certain arguments Mindspirit had made regarding the jury instructions.  [Dkt. No. 132]

I have carefully considered the parties' proposed jury instructions as well as the legal arguments they have made in their briefs.  I will now rule on a number of legal issues related to the jury charge.  In doing so, I am of course guided by the general principle that parties are entitled to have claims and defenses presented to a jury only where a reasonable jury could find – based on the evidence presented at trial – that such claims or defenses are meritorious.  See, e.g., Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994) ("A litigant is entitled to an instruction on a claim where that claim is supported by evidence of probative value.")  Where the evidence is insufficient to support a particular claim or theory, however, the jury should not be instructed on that claim or theory.  [See Harris v. O'Hare, 770 F.3d 224, 238 (2d Cir. 2014); City of New York v. Pullman, 662 F.2d 910 (2d Cir. 1981) (trial court's refusal to give requested damages instruction was appropriate, because the proposed damages remedy was not "supported by evidence of any probative value")].

I will begin with certain threshold issues in this case – whether there is evidence from which a reasonable jury could find that (1) Evalueserve issued stock options to Rajat Gupta and Anil Kumar; or (2) that Evalueserve transferred stock options that had been issued to Mindspirit to Rajat Gupta and Anil Kumar.  I will then address Evalueserve's affirmative defenses of oral amendment [and] estoppel. . . .

Evalueserve seeks to assert as affirmative defenses oral amendment and estoppel.  [See Second Proposed Jury Instructions (Dkt. No. 125) at 3]  Evalueserve argues that it and Mindspirit "orally amended the contract to provide that Rajat Gupta and Anil Kumar would receive the stock options instead of Mindspirit."  Id.  Evalueserve further contends that "Mindspirit is estopped or denied from claiming a breach of contract because Evalueserve reasonably relied to its detriment on Rajat Gupta's request to transfer the stock options to Mr. Gupta and Mr. Kumar."  Id.  These arguments are premised on the notion that Evalueserve issued stock options directly to Gupta and Kumar, or that it transferred Mindspirit's stock options to Gupta and Kumar.  There is, however, no such evidence.

As an initial matter, the parties stipulated – in Plaintiff['s] 85 – that "Evalueserve has no evidence that a stock option grant notice reflecting Rajat Gupta [or Anil Kumar] as an option holder for Evalueserve options ever existed."  [See PX 85, ¶¶ 10-11]  Moreover, Nand Gangwani – Evalueserve's chief financial officer – testified that he had never seen a stock option grant notice in the name of Rajat Gupta or Anil Kumar.  [Tr. 759]  Marc Vollenweider – one of the founders of Evalueserve – testified that he had never seen a

stock option grant notice in the name of Rajat Gupta or Anil Kumar.  [Tr. 698]  Alok Aggarwal – Evalueserve's Chairman at all relevant times – also testified that no stock option grant notice had ever been issued in the name of Rajat Gupta or Anil Kumar and that this was a "mistake."  [Tr. 906, 907]  There are also e-mails [in] evidence from Evalueserve employees in which they recount their inability to find any stock option grant notice in the names of Gupta or Kumar.  [PX 74, PX 77]  In short, as the parties have stipulated, there is no evidence that a stock option grant notice was ever issued to Rajat Gupta or Anil Kumar.

While Evalueserve concedes that no stock option grant notice was ever issued to Rajat Gupta or Anil Kumar, it points to a board resolution dated November 7, 2001, in which the Evalueserve's board authorized the issuance of stock options to Gupta and Kumar. (Def. Oct. 6, 2019 Ltr. [Def. Oct. 6, 2019 Ltr. (Dkt. No. 127) at 1; PX 19 (Board Resolution)]  No reasonable jury could find that the November 7, 2001 board resolution cited by Evalueserve is a substitute for [, or] the functional equivalent of[,] a stock option grant notice.

Evalueserve's chairman, Mr. Aggarwal, testified that the issuance of a stock option grant notice is the first step in a multistep process leading to the issuance of stock options.  [Tr. at 974-975, 978]  Mr. Aggarwal testified that every recipient of Evalueserve's stock options has received a stock option grant notice.  And as I said, he further testified that Evalueserve made . . . "mistake" in not issuing a stock option grant notice to Gupta and Kumar.  [Tr. 907]

The stock option [grant] notice issued to Mindspirit, together with the related stock option agreement between Mindspirit and Evalueserve, are in evidence as Plaintiff's Exhibit 1, [and] these documents contain numerous important terms that are not addressed in any fashion in the November 2001 board resolution cited by Evalueserve.

The stock option grant notice and the stock option agreement issued to Mindspirit address, among other things, [1] the vesting of the stock options; [2] the number of shares and exercise price; [3] the method of payment; [4] whether Mindspirit could "exercise [its] [O]ption only for whole shares of [C]ommon [S]tock"; [5] securities law compliance; [6] the term of the options; [7] how options are to be exercised; and [8] the transferability of options.  [PX 1]  The November 7, 2001 board resolution states the number of stock options granted to Gupta and Kumar, the strike price, the vesting schedule and expiration date, but otherwise contains none of the information set forth in the stock option grant notice and the stock option agreement.  [PX 19]

The parties have also stipulated that the . . . November 2001 board resolution granting options to Gupta and Kumar was never given to Mindspirit, Gupta or Kumar – or to the members of Mindspirit, those being Malvika Kumar and Rosewood Partners – prior to this litigation.  [PX 85 ¶¶ 12-13]

Given these circumstances, no reasonable jury could find that the board resolution cited by Evalueserve is the functional equivalent of a stock option grant notice.  In sum, there

is no evidence that Evalueserve issued stock options to Gupta and Kumar, and there is no evidence that Evalueserve ever transferred Mindspirit's stock options to Gupta and Kumar. While there is certainly evidence that Evalueserve told Gupta and Kumar that stock options had been issued to them, that is not the same as stock options actually having been issued to them.

Parenthetically, I note that Evalueserve's former chairman, Mr. Aggarwal, testified today, apparently for the first time in this lengthy and hard fought litigation, that the Mindspirit options had been canceled. He testified that he discussed this with Evalueserve's outside counsel, Mr. David Adler. There is no documentary evidence of any sort showing that Evalueserve canceled the 480,000 Mindspirit options. Up to now, Evalueserve's position and Mr. Aggarwal's position had been that Evalueserve had never issued options to Mindspirit. In any event, there is no board resolution regarding the alleged cancellation of the [480,000] Mindspirit options. There is no written notice of any sort to Mindspirit stating that the [480,000] Mindspirit options have been canceled. There is no email or correspondence in which the cancellation of the 480,000 Mindspirit options are discussed and there is no written communication between the outside counsel, David Adler, and Evalueserve concerning the company's alleged cancellation of the 480,000 Mindspirit options and no written communication reflecting the conversation in which Mr. Aggarwal allegedly disclosed the cancellation of these options to Adler. In short, there is no written evidence of any sort that Evalueserve canceled the option grant to Mindspirit.

In any event, the absence of evidence showing that a stock option grant notice was issued in the name of Rajat Gupta or Anil Kumar is fatal to Evalueserve's affirmative defenses of oral amendment and estoppel, which I will now discuss.

As I noted, Evalueserve contends that any agreement to issue options to Mindspirit was orally amended by the parties. More specifically, Evalueserve contends that an oral amendment [took] place in September 2001 when Gupta allegedly asked Aggarwal to issue the options in his name and in Kumar's name instead of in Mindspirit's name. Gupta denies making any such request. [Tr. 366] Aggarwal testified that Gupta made this request. [Tr. 907, 969]

"To be enforceable, an oral modification must possess all of the elements necessary to form a contract, including valid consideration." [Cohan v. Movtady, 751 F. Supp. 2d 436, 442 (E.D.N.Y. 2010); see also Choice Money Transfer, Inc. v. Societe Int'l de Change, Arimec, LLC, No. 17 CIV. 2639 (JSR), 2017 WL 6507108, at *4 (S.D.N.Y. Dec. 18, 2017) (same); Baraliu v. Vinya Capital, L.P., 765 F. Supp. 2d 289, 298 (S.D.N.Y. 2011) (same).]

Evalueserve's oral amendment argument fails ab initio, because there is no evidence that Evalueserve performed. That is, there is no evidence that Evalueserve issued options in the name of Gupta and Kumar. There is likewise no evidence of consideration flowing to Mindspirit in exchange for its supposed agreement to give up its options.

Evalueserve argues that there was consideration here because "Mindspirit avoided an obligation to provide '[help] and guidance' to Evalueserve." [Def. Oct. 6, 2019 Ltr. (Dkt. No. 127) at 2] But Aggarwal testified that Gupta did in fact provide the advice and introductions that Evalueserve had bargained for. [Tr. 878, 895] In short, there is no evidence that Mindspirit received any consideration or any benefit in exchange for the supposed oral amendment.

Evalueserve argues that "substantial performance of [a] contract by the parties erase[s] the defenses of [lack of] mutuality and consideration." [Def. Oct. 6, 2019 Ltr. (Dkt. No. 127) at 2) (quoting Scientific Management Institute, Inc. v. Mirrer, 278 N.Y.S.2d 58 (2d Dept. 1967))] Here, however[,] there was no substantial performance by Evalueserve [–] no stock option grant notice was ever issued to Gupta or Kumar. In short, Evalueserve will not be permitted to present an oral amendment affirmative defense to the jury, because no reasonable jury could find the factual predicates necessary to support such an argument.

Evalueserve has submitted a proposed jury instruction addressing its affirmative defense of equitable estoppel. "[T]o succeed on the defense of equitable estoppel, defendants must establish three elements. These are: '[1] a misrepresentation by the plaintiff, [2] reasonable reliance by the defendant, and [3] prejudice.'" [Johnson & Johnson v. Actavis Grp., No. 06 CIV. 8209 (DLC), 2008 WL 228061, at *9 (S.D.N.Y. Jan. 25, 2008), as corrected (Feb. 21, 2008) (quoting Veltri v. Bldg. Serv. 32B-J Pension Fund, 393 F.3d 318, 326 (2d Cir. 2004)); see also Rich v. Orlando, 128 A.D.3d 1330, 1331 (4th Dept. 2015) ("The elements pertaining to the party asserting estoppel are (1) lack of knowledge of the true facts; (2) good faith reliance; and (3) a change of position"); Holm v. C.M.P. Sheet Metal, Inc., 89 A.D.2d 239, 235 (4th Dept. 1982) (same).]

Here, there is no evidence that Evalueserve "changed its position" in reliance on Gupta's supposed request to issue the options in his name and in Kumar's name rather than in Mindspirit's name. Again, there is no evidence that Evalueserve issued a stock option grant notice to Gupta or Kumar.

To the extent that Evalueserve contends that it transferred Mindspirit's options to Gupta and Kumar at Gupta's request, any reliance on Gupta for this action would not [have] been reasonable. Section 6(g) of the Equity Incentive Plan provides that "[a] non[]statutory [S]tock [O]ption shall be transferable to the extent provided in the [O]ption [A]greement." [PX 1] Under Section Eight of the stock option agreement, the "[O]ption is not transferable." [Id.] Given this unambiguous provision forbidding transfer, Evalueserve could not have reasonably relied on any requests by Gupta to transfer[] Mindspirit's options to Gupta and Kumar. [See Randolph Equities, LLC v. Carbon Capital, Inc., 648 F. Supp. 2d 507, 524 (S.D.N.Y. 2009) (holding that "where the 'terms of an unambiguous contract are inconsistent with the statements that form the basis of the claim, the claiming party could not have reasonably relied on those statements as a matter of law.'" (quoting Ixe Banco, S.A. v. MBNA Am. Bank, N.A., 07 Civ. 0432 (LAP), 2008 WL 650403, at *11 (S.D.N.Y. Mar. 7, 20018)).]

(Tr. 1191-1202)

## IV.    **JURY VERDICT AND EVALUESERVE'S POST-TRIAL MOTION**

On October 11, 2019, the jury returned a verdict for Mindspirit, finding Evalueserve liable for breach of contract.  (Verdict (Dkt. No. 153))  On October 24, 2019, this Court entered judgment in favor of Mindspirit in the amount of $7,480,457.29.  (Judgment (Dkt. No. 155))

On November 21, 2019, Evalueserve moved for a new trial pursuant to Fed. R. Civ. P. 59.  (Def. Br. (Dkt. No. 158))  Evalueserve argues that this Court erred in refusing to instruct the jury on its oral amendment and equitable estoppel affirmative defenses.  (Id. at 4)

## DISCUSSION

## I.    **LEGAL STANDARD**

"Rule 59 of the Federal Rules of Civil Procedure permits a court, on motion, to 'grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at all in federal court.'"  Springer v. Cedro, 894 F. Supp. 2d 474, 481 (S.D.N.Y. 2012) (quoting Fed. R. Civ. P. 59(a)(1)(A)).  "The decision to grant a new trial pursuant to Rule 59(a) is committed to the sound discretion of the trial judge."  Livingston v. Escrow, No. 08 Civ. 6576 (FPG), 2014 WL 1466469, at *2 (W.D.N.Y. Apr. 15, 2014) (citing Sequa Corp. v. GBJ Corp., 156 F. 3d 136, 143 (2d Cir. 1998)).  For a court "to order a new trial under Rule 59(a), it must conclude that the jury has reached a seriously erroneous result or . . . [that] the verdict is a miscarriage of justice, i.e., it must view the jury's verdict as against the weight of the evidence."  Manley v. AmBase Corp., 337 F.3d 237, 245 (2d Cir. 2003) (internal quotations and citations omitted).  "Accordingly, '[o]n a motion for a new trial, the moving party bears [a] heavy burden.'"  Prendergast v. Pac. Ins. Co., No. 09 Civ. 6248

(MWP), 2013 WL 5567656, at *5 (W.D.N.Y. Sept. 25, 2013) (quoting <u>Manes v. Metro-North</u> <u>Commuter R.R.</u>, 801 F. Supp. 954, 956 (D. Conn. 1992), <u>aff'd</u>, 990 F.2d 622 (2d Cir. 1993)). "Furthermore, 'Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a "second bite at the apple."'" <u>Kogut v. Cty. of Nassau</u>, No. 06 Civ. 6695 (JS) (WDW), 2013 WL 3820826, at *2 (E.D.N.Y. July 22, 2013) (quoting <u>O'Connell v. Onondaga Cty.</u>, No. 09 Civ. 0364 (FJS) (ATB), 2013 WL 998598, at *1 (N.D.N.Y. Mar. 13, 2013)).

"[A] trial court should be most reluctant to set aside that which it has previously decided unless convinced that it was based on a mistake of fact or clear error of law, or that refusal to revisit the earlier decision would work a manifest injustice."  <u>Libutti v. United States</u>, 178 F. 3d 114, 118 (2d Cir. 1999).  "The unsuccessful party's disagreement with the court's decisions or conclusion is insufficient to obtain relief under Rule 59."  <u>Ullman v. Starbucks</u> <u>Corp.</u>, 152 F. Supp. 2d 322, 326 (S.D.N.Y. 2001) (citing <u>Farr Man Coffee, Inc. v. Chester</u>, No. 88 Civ. 1692 (DNE), 1993 WL 328854, at *1 (S.D.N.Y. Aug. 26, 1993)).

"An erroneous jury instruction requires a new trial unless the error is harmless." <u>Callahan v. Wilson</u>, 863 F.3d 144, 148 (2d Cir. 2017).  "A jury instruction is erroneous if it misleads the jury as to the correct legal standard or does not adequately inform the jury on the law."  <u>Id.</u> (internal quotation marks omitted).  "'A litigant is entitled to an instruction on a claim where that claim is supported by evidence of probative value.'"  <u>Harris v. O'Hare</u>, 770 F.3d 224, 238 n.9 (2d Cir. 2014) (quoting <u>Anderson v. Branen</u>, 17 F.3d 552, 557 (2d Cir. 1994)).  "'All that a party needs to show is that there is some evidence supporting the theory behind the instruction so that a question of fact may be presented to the jury.'"  <u>Id.</u> (quoting <u>Branen</u>, 17 F.3d at 557). But "[a] party is not entitled to have the court give the jury an instruction for which there is no

factual predicate in the trial record."  McCardle v. Haddad, 131 F.3d 43, 52 (2d Cir.1997); see

City of New York v. Pullman, 662 F.2d 910 (2d Cir. 1981) (trial court's refusal to give requested

damages instruction was appropriate, because the proposed damages remedy was not "supported

by evidence of any probative value").

**II.    ANALYSIS**

>    **A.    Whether Evalueserve Offered Evidence at Trial that
>              it Had Issued Stock Options to Gupta and Kumar**

Evalueserve's affirmative defenses of oral amendment and equitable estoppel

were premised on the notion that it had transferred Mindspirit's stock options to Gupta and

Kumar, after Gupta asked Aggarwal to make this change.  (Tr. 1193-94)  Evalueserve contends

that "[b]ecause a reasonable jury could have found that Evalueserve [issued] stock options to

Kumar and Gupta, the Court erred in not instructing the jury on oral amendment and estoppel."

(Def. Br. (Dkt. No. 158) at 9) (emphasis omitted))  As this Court explained in its bench ruling

during trial, there is no evidence that Evalueserve issued stock options in the names of Gupta and

Kumar.  Indeed, all the evidence is to the contrary.

The parties stipulated that "Evalueserve has no evidence that a Stock Option

Grant Notice reflecting Rajat Gupta [or] . . . Anil Kumar as an optionholder for Evalueserve

options ever existed."  (PX 85 ¶¶ 10-11)  Multiple Evalueserve witnesses – including Chairman

Aggarwal, CEO Vollenweider, and CFO Gangwani – testified that they had no knowledge of

stock option grant notices ever having been issued in the names of Gupta or Kumar.  (Tr. 689

(Vollenweider), 759 (Gangwani), 906-07 (Aggarwal))  Mindspirit also introduced emails of

Evalueserve employees in which they discussed their inability to find Evalueserve stock option

grant notices in the names of Gupta and Kumar.  (PX 74, PX 77)  Accordingly, as this Court

ruled during trial, no reasonable juror could find that Evalueserve had issued stock options in the names of Gupta and Kumar.

As discussed above, Chairman Aggarwal testified that the issuance of a stock option grant notice is the first step in a multi-step process leading to the issuance of stock options.  (Tr. 898, 974-975, 978-79 (Aggarwal))  Indeed, Aggarwal testified that "every recipient of options from Evalueserve" received a stock option grant notice.  (Tr. 893 (Aggarwal)) According to Aggarwal, Evalueserve simply made a "mistake" in not issuing stock option grant notices to Gupta and Kumar.[5]  (Tr. 907 (Aggarwal))

Although Evalueserve pointed to a November 7, 2001 Board Resolution authorizing the issuance of Evalueserve stock options to Gupta and Kumar, there was no evidence that the Board Resolution was a substitute for a stock option grant notice.  To the contrary, Aggarwal testified that the issuance of a stock option grant notice was a separate step that preceded the issuance of a board resolution.  (Tr. 898, 974-75 (Aggarwal))  Moreover, as discussed above, the Board Resolution lacked much of the information included in an Evalueserve stock option grant notice – including information related to the method of payment, whether the options could be exercised "only for whole shares of Common Stock," securities law compliance information, how the options were to be exercised, and the transferability of the

---

[5]  Chairman Aggarwal was the critical witness for Evalueserve at trial, and he was not a credible witness.  His deposition testimony was inconsistent with his trial testimony, and his trial testimony was internally inconsistent.  During cross-examination, he was impeached on a variety of topics.  (See, e.g., Tr. 1022-28, 1088-91, 1126-28)  As discussed in this Court's bench ruling, after years of hard-fought litigation, Aggarwal raised for the first time at trial the notion that the Mindspirit options had been cancelled – an assertion for which there was no evidentiary support.  (Tr. 1198)  And with respect to Evalueserve's admitted failure to issue a stock option grant notice to Gupta and Kumar, Aggarwal gave a series of shifting explanations, variously attributing this omission to (1) "a mistake"; (2) Gupta telling Aggarwal not to bother issuing a stock option grant notice to Gupta; (3) it "slipped our mind"; and (4) "start-up[s] . . . make some errors of these kinds unfortunately and we did."  (Tr. 900-07) (Aggarwal))

stock options.[6]  (Compare PX 1 with PX 19)  Moreover, the parties stipulated that the Board

Resolution was never provided to Mindspirit, Gupta, the Kumars, or Rosewood prior to this

litigation.  (PX 85 ¶¶ 12-13) ("Evalueserve did not deliver copies of its Board Resolution[] dated

November 7, 2001 . . . to Mindspirit[,] . . . Rajat Gupta, Anil Kumar, Malvika Kumar, or

Rosewood Partners prior to this litigation.").  Given this evidence, no reasonable jury could have

found that the Board Resolution was the functional equivalent of a stock option grant notice,

which Aggarwal testified was sent to every Evalueserve option holder.  (Tr. 893, 974

(Aggarwal))

             Evalueserve argues that Aggarwal's testimony about his September 2001

telephone call with Gupta – in which Gupta allegedly told Aggarwal not to bother sending Gupta

a stock option grant notice – creates a fact issue as to whether it was necessary for Evalueserve to

issue a stock options grant notice.  (Def. Br. (Dkt. No. 158) at 6)  Aggarwal's testimony on this

point was as follows:

> I said I'll perhaps sent out option certificate or something like that.  And then
> [Gupta] said, well, that's not required.  It's up to you but board resolution is
> definitely required and I believe I never sent these option certificate either to
> [Gupta] or [Kumar]. . . .
>
> . . . [Gupta] said as long as you put it in the register properly in the options
> register properly and you do your, I'm only interested in the results. . . .
>
> I do not know exactly the words but he did say that as long as you put it in your
> board resolution and in the options register, options spreadsheet, that's perfectly
> fine. . . .

---

[6]  Evalueserve complains that the Court did not "state that the missing terms were essential or
even why they were important."  (Def. Br. (Dkt. No. 158) at 7)  This argument misses the point.
The issue is not whether the missing terms are "essential" for the issuance of stock options, but
rather whether the Board Resolution is somehow the equivalent of a stock option grant notice.
The differences in content between the Board Resolution and an Evalueserve stock option grant
notice undermines Evalueserve's argument that the Board Resolution was the equivalent of a
stock option grant notice.

Q.  Now, did in fact Evalueserve to your knowledge ever issue a stock option grant notice to Mr. Gupta in person himself individually?

A.  To the best of my knowledge, no, sir.

Q.  Did Evalueserve ever issue a stock option grant notice to Mr. Kumar?

A.  To the best of my knowledge, no, sir.

Q. And why was that?

A.  I believe one, it was in hindsight it was a mistake but I believe because I was talking to Mr. Gupta and he said, look, it's OK as long as you put it to the board resolution and you get it all approved I'm okay with it.  I talked to Anil [Kumar]. It also slipped our mind.  In the first few years of a start-up not making any excuses but you do make some errors of these kinds unfortunately and we did.

(Tr. 900-07 (Aggarwal))

Even accepting Aggarwal's testimony that Gupta told him not to bother sending a stock option grant notice, this testimony does not contradict or undermine the undisputed evidence that the issuance of a stock option grant notice is a necessary step in Evalueserve's process for issuing stock options.  (See Tr. 893, 898, 974-75, 978-79 (Aggarwal))

Finally, without offering any supporting citations to the trial transcript, Evalueserve argues that the "parties' future conduct" – a reference to post-2001 conduct – demonstrates that Evalueserve stock options were in fact issued in the names of Gupta and Kumar.  (Def. Br. (Dkt. No. 158) at 7-8)  Evalueserve appears to be referencing Gupta's unsuccessful attempt to exercise the Evalueserve options in his own name in April 2011 – a decade after they had been issued to Mindspirit – after Aggarwal told him that Evalueserve had issued options in Gupta's name, and that a failure to exercise them immediately would result in negative tax consequences.  (Tr. 405-14 (Gupta))  The fact that in 2011 – ten years after the Evalueserve stock options had been issued to Mindspirit – Evalueserve represented to Gupta that

18

options had been issued in his and Kumar's names (see, PX 43) does not – in the circumstances

of this case – constitute evidence that Evalueserve stock options had in fact been issued in the

names of Gupta and Kumar.

In sum, based on the evidence offered at trial, no reasonable juror could conclude

that Evalueserve had issued stock options to Gupta and Kumar.  As discussed below, the absence

of evidence showing that Evalueserve issued stock options in the names of Gupta and Kumar is

fatal to Evalueserve's oral amendment and equitable estoppel defenses.

**B.**     **Oral Amendment**

Evalueserve acknowledges that Evalueserve's Equity Incentive Plan bars oral

amendments to the Stock Option Agreement, but argues that Gupta and Aggarwal nevertheless

agreed to orally amend the Stock Option Agreement by changing the recipient of the Evalueserve

stock options from Mindspirit to Gupta and Kumar.  (Def. Br. (Dkt. No. 158) at 6; Def. Pretrial

Br. (Dkt. No. 100) at 2)  Evalueserve goes on to argue that – had the Court instructed the jury on

its oral amendment defense – the jury would have found that Evalueserve performed its

obligations under the orally amended agreement by transferring Mindspirit's stock options to

Gupta and Kumar.  (Def. Br. (Dkt. No. 158) at 9)

"New York law generally recognizes and enforces [contractual clauses that

prohibit oral modification]."[7]  Ba Chub Cay, LLC v. McCrory, No. 08 CIV. 5217 (JSR), 2009

WL 976826, at *2 (S.D.N.Y. Apr. 8, 2009) (citing N.Y. Gen. Oblig. Law § 15-301(1)).

"However, the parties may waive a no-oral modification clause, and an oral modification 'may

be enforced even in the absence of a writing if either party has partially performed under the

---

[7]  This Court has previously ruled that New York law governs (Memorandum Opinion & Order
(Dkt. No. 90) at 26 n.7, 38-45), and Evalueserve's new trial motion does not challenge the
application of New York law.

terms of that oral agreement.'"  Assembly Point Aviation, Inc. v. Richmor Aviation, Inc., No.

1:13-CV-298 (FJS) (DJS), 2016 WL 7742808, at *6 (N.D.N.Y. Mar. 14, 2016) (quoting Merrill

Lynch Interfunding, Inc. v. Argenti, 155 F.3d 113, 121 (2d Cir. 1998)).  "Under this doctrine, an

oral agreement may modify a preexisting written agreement if (1) there has been partial

performance of the oral modification and (2) that partial performance is unequivocally referable

to the oral modification – that is, the conduct constituting the alleged partial performance must

not be compatible with the written agreement."  Mooney v. AXA Advisors, L.L.C., 19 F. Supp.

3d 486, 504 (S.D.N.Y. 2014) (citing Rose v. Spa Realty Assocs., 42 N.Y.2d 338, 343-44 (1977)).

        "'To be enforceable, an oral modification must possess all of the elements

necessary to form a contract, including valid consideration.'"  Baraliu v. Vinya Capital, L.P., 765

F. Supp. 2d 289, 298 (S.D.N.Y. 2011) (quoting Cohan v. Movtady, 751 F. Supp. 2d 436, 442

(E.D.N.Y. 2010)).  "Under New York law, consideration is defined as 'some right, interest, profit

or benefit accruing to one party, or some forbearance, detriment, loss, or responsibility, given,

suffered, or undertaken by the other.'"  Alpha Capital Anstalt v. Real Goods Solar, Inc., 311 F.

Supp. 3d 623, 630 (S.D.N.Y. 2018) (quoting Hamer v. Sidway, 124 N.Y. 538, 545 (1892)).

        Evalueserve's oral amendment affirmative defense fails as a matter of law for two

reasons.  First, no reasonable juror could conclude that there was substantial performance of the

alleged oral modification because, as discussed above, there is no evidence that Evalueserve

performed by issuing stock options in the names of Gupta and Kumar.  Given that none of the

480,000 options in dispute were ever issued to Gupta and Kumar, no reasonable juror could have

found that Evalueserve performed or substantially performed.  See Triboro Quilt Mfg. Corp. v.

Luve LLC, No. 10 CV 3604 VB, 2014 WL 1508606, at *11 (S.D.N.Y. Mar. 18, 2014) (noting

that there is no "'simple test for determining whether substantial performance has been

rendered,'" but that one factor is the "ratio of the performance already rendered to that

unperformed") (quoting Hadden v. Consol. Edison Co. of New York, 34 N.Y.2d 88, 96 (1974)).

Second, no reasonable juror could find that the alleged oral amendment was

supported by consideration.  See Ershow v. Site Holdings, Inc., No. 95 CIV. 2451 (RPP), 1995

WL 384457, at *4 (S.D.N.Y. June 28, 1995) ("[A]n agreement unsupported by consideration is

invalid. . . . Fresh consideration is required for an oral modification of a written contract. . . .")

(citations omitted).  Evalueserve has argued that there was consideration because Mindspirit

avoided an obligation to provide help and guidance to Evalueserve.  (Def. Br. (Dkt. No. 158) at

10)  But Chairman Aggarwal testified that Gupta provided Evalueserve with help and guidance –

including strategic advice and introductions to important potential clients – even after the alleged

oral amendment.  (Tr. 878-80, 895 (Aggarwal))  Accordingly, the alleged oral amendment did

not relieve Mindspirit of any obligation owed to Evalueserve.

Evalueserve further contends that Mindspirit was an investment vehicle without

employees, and therefore the jury could infer that "Gupta was providing the advice and

introductions in his individual capacity rather than as an agent for Mindspirit."  (Def. Br. (Dkt.

No. 158) at 10)  The evidence at trial showed, however, that – both before and after the alleged

oral modification – the parties expected Gupta, not Mindspirit, to assist Evalueserve.  (Tr. 876-

80, 895 (Aggarwal))  And given that Mindspirit was at all times an investment vehicle without

employees, the only reasonable view of the evidence was that the parties understood that Gupta

would be providing "help and guidance" to Evalueserve as Mindspirit's agent.  (Tr. 895

(Aggarwal))

Citing Aggarwal's testimony, Evalueserve contends that Gupta told Aggarwal that the transfer of stock options into his name would help him avoid "future problems."[8]  (Def. Br. (Dkt. No. 158) at 9)  The trial evidence contains no explanation as to the "future problems" Gupta was allegedly trying to avoid.  In any event, any benefit to Gupta from the change in option holder would not constitute consideration to Mindspirit.

Finally, Evalueserve argues that the alleged issuance of options to Gupta and Kumar reduced Evalueserve's profits.  (Def. Br. (Dkt. No. 158) at 10)  As an initial matter – even if this were true – that effect would not constitute consideration flowing to Mindspirit.  In any event, there was no evidence at trial as to the relative cost to Evalueserve of issuing options to Mindspirit as opposed to later transferring or re-issuing those same options to Gupta and Kumar.  The evidence cited by Evalueserve refers to the expense associated with issuing stock options generally (id. (citing Tr. 904-05 (Aggarwal))), and Evalueserve cites no evidence demonstrating that transferring or re-issuing the stock options to Gupta and Kumar was more expensive than the original issuance of these same options to Mindspirit.  In sum, no reasonable juror could have found that the alleged oral amendment was supported by consideration.

Because there was no evidence at trial that (1) Evalueserve performed or substantially performed under the alleged orally amended agreement, or (2) the alleged oral modification was supported by consideration, Evalueserve was not entitled to a jury instruction concerning its oral amendment affirmative defense.  Harris, 770 F.3d at 238 n.9 (a party seeking a jury instruction has the burden to present "'evidence supporting the theory behind the

---

[8]  The transcript says "avoid any potential information" as opposed to "future problems" (Tr. 899 (Aggarwal)), but Evalueserve attributes this wording to a transcription error, and Mindspirit does not argue otherwise.  (Def. Br. (Dkt. No. 158) at 9 n.2; Pltf. Opp. (Dkt. No. 165) at 15)

instruction so that a question of fact may be presented to the jury'") (quoting Anderson, 17 F.3d at 557).

C.   **Equitable Estoppel**

Evalueserve contends that it relied on Gupta's statements in issuing the stock options in the names of Gupta and Kumar, and that Mindspirit should therefore be estopped from seeking enforcement of the parties' agreement.  (Def. Br. (Dkt. No. 158) at 10; Def. Reply (Dkt. No. 168) at 11)  "[T]o succeed on the defense of equitable estoppel, defendants must establish three elements.  These are: '(1) a misrepresentation by the plaintiff, (2) reasonable reliance by the defendant, and (3) prejudice.'"  Johnson & Johnson v. Actavis Grp., No. 06 CIV. 8209 (DLC), 2008 WL 228061, at *9 (S.D.N.Y. Jan. 25, 2008), as corrected (Feb. 21, 2008) (quoting Veltri v. Bldg. Serv. 32B-J Pension Fund, 393 F.3d 318, 326 (2d Cir. 2004)); see also Rich v. Orlando, 128 A.D.3d 1330, 1331 (4th Dept. 2015) ("The elements pertaining to the party asserting estoppel are (1) lack of knowledge of the true facts; (2) good faith reliance; and (3) a change of position").

Here, there is no evidence that Evalueserve changed its position in reliance on Gupta's alleged request to issue the options in his and Kumar's name.  As discussed above, there is no evidence that Evalueserve ever actually issued stock options to Gupta and Kumar.  See, e.g., Reisler v. 60 Gramercy Park N. Corp., 88 A.D.2d 312, 317 (1st Dep't 1982) ("no equitable estoppel" where there was "no change of position" and "no performance").

Moreover, any reliance by Evalueserve on Gupta's alleged oral request to transfer Mindspirit's options to Gupta and Kumar, or re-issue them in the names of Gupta and Kumar, would have been unreasonable.  The Stock Option Grant Notice Evalueserve issued to Mindspirit states that any amendments must be in writing.  (PX 1 at DEF0000039)  Moreover, Section 6(g)

23

of Evalueserve's Equity Incentive Plan provides that "[a] nonstatutory Stock Option shall be transferable to the extent provided in the Option Agreement" (PX 1 at DEF0000033), and the Stock Option Agreement states that the "Option is not transferable."[9]  (PX 1 at DEF0000022) Given that oral modifications and transfers are not permitted under the governing documents, Evalueserve could not have reasonably relied on Gupta's alleged request by telephone to transfer Mindspirit's options to Gupta and Kumar.

Courts addressing claims of equitable estoppel have repeatedly held that it is unreasonable to rely on oral representations that contradict a written contract's express terms.[10] See, e.g., Cent. New York Laborers' Health v. JWJ Indus., Inc., No. 5:12-CV-1319 (NAM) (DEP), 2015 WL 12564221, at *11 (N.D.N.Y. Mar. 5, 2015) ("[Defendant's] . . . equitable estoppel [argument] based on the oral modifications . . . is . . . unavailing. . . . Given the clear language of the . . . contractual terms to which the parties were bound, it was unreasonable for [defendant] to rely on any oral modification."); King v. Unique Rigging Corp., No. 01-CV-3797 (DLI) (VVP), 2005 WL 2290585, at *4 (E.D.N.Y. Sept. 20, 2005) ("Defendants are not entitled to an equitable estoppel defense. . . . It was unreasonable for defendants to rely on any supposed oral modification . . . because the language in the [labor contract] clearly set forth contractual terms, to which the parties were bound."); 1407 Broadway Real Estate LLC v. Tsui, 36 Misc. 3d

---

[9]  Vollenweider testified that Evalueserve stock options do not become "live" until they receive board and regulatory approval (Tr. 579-80 (Vollenweider)), and Evalueserve cites this testimony in arguing that Evalueserve stock options are freely transferable prior to board and regulatory approval.  (Def. Br. (Dkt. No. 158) at 7)  The stock option grant notice issued to Mindspirit states, however, that the options are not transferable, and nothing in the grant notice suggests that the restrictions on transferability only apply after board and regulatory approval.  (PX 1 (Stock Option Grant Notice))

[10]  Evalueserve complains that this Court's bench ruling relies on promissory estoppel cases rather than equitable estoppel cases.  (Def. Br. (Dkt. No. 158) at 11)  As the cases cited in this Order demonstrate, courts have reached the same conclusion in the context of equitable estoppel.

1219(A), 959 N.Y.S.2d 90 (N.Y. Sup. Ct. 2012) ("The Court finds defendants' argument regarding the applicability of the doctrine of equitable estoppel insufficient to raise a triable issue of fact.  Defendants do not show reasonable reliance on the representations by plaintiff. . . . [B]oth parties were involved in discussions about a modification of the lease.  However, since there was no written modification of the lease it was not reasonable for defendants to rely on plaintiff's oral representations[.]").

Reliance on a telephone call from Gupta would have been all the more unreasonable given that Gupta had no clear authority to transfer options away from Mindspirit.  Although Gupta facilitated Mindspirit's investment in Evalueserve, Gupta had no ownership stake in Mindspirit and no apparent authority to transfer its assets to himself.  See Adriana Dev. Corp. N.V. v. Gaspar, 81 A.D.2d 235, 237 (1st Dep't 1981) ("Even a general power to an agent does not include the power to convey his principal's property to himself.").  Because no reasonable juror could have found that Evalueserve relied – much less reasonably relied – on Gupta's alleged statements, Evalueserve was not entitled to a jury instruction concerning its affirmative defense of equitable estoppel.

## CONCLUSION

For the reasons stated above, Defendant Evalueserve's motion for a new trial (Dkt. No. 157) is denied.  The Clerk of Court is directed to terminate the motion and to close this case.

Dated: New York, New York
July 4, 2020

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge